UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:15-CR-34-CLC-CHS |
| | ) | |
| ANTHONY J. MALONE, JR. | ) | |

**MEMORANDUM & ORDER**

Before the Court is Defendant Anthony J. Malone, Jr.'s notice of objections to Magistrate Judge Christopher Steger's November 10, 2015, Report and Recommendation ("R&R"). (Doc. 20.) On August 20, 2015, Defendant filed a motion to suppress evidence discovered during a search of his vehicle. (Doc. 14.) Magistrate Judge Steger held a hearing on the motion and subsequently filed an R&R recommending the Court deny Defendant's motion. (Doc. 19.) Defendant timely objected (Doc. 20), and the Government responded in opposition (Doc. 21).

The Court has reviewed the relevant portions of the record, and for the following reasons, the Court will **OVERRULE** Defendant's objections to the R&R, **ACCEPT** and **ADOPT** the R&R, and **DENY** Defendant's motion to suppress.

**I.     BACKGROUND**

On April 25, 2014, at around 10:30 p.m., Officer Justin Headden of the Chattanooga Police Department was patrolling on Interstate 24 near Rossville Boulevard when he noticed a black Ford 500 with dark window tinting traveling eastbound. Based on his belief that the window tint was darker than allowed by state law, Headden stopped the vehicle. Defendant was driving, and with him were two passengers, Saleeta Ellis and Calvin Ringer. Headden ran each individual's information through the National Crime Information Center (the "NCIC") database and discovered that both Defendant and Ringer had prior narcotics-related arrests.

After running their information, Headden returned and asked the occupants to step out of the vehicle while he measured the window tint with a light meter. After determining the window tint was indeed too dark, Headden requested permission to search the vehicle. When Defendant refused, Headden decided to call for a drug dog to inspect the vehicle. A K-9 unit arrived approximately twelve minutes later, and while sniffing the car, the dog alerted to the presence of drugs in the vehicle. A search revealed marijuana residue in one of the door handles, a Springfield XD(M) 9mm pistol in the center console, and a Ruger .357 revolver under the front passenger seat. After the occupants of the vehicle were placed under arrest and advised of their rights, Defendant stated the vehicle belonged to him but he did not realize the firearms were in the vehicle. He said he had permitted his brother to drive it earlier in the day.

Defendant was not ticketed for the window tint violation, but he was subsequently charged with unlawful possession of a firearm after being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

Defendant moved to suppress the seized weapons on the ground that Headden had prolonged the traffic stop without reasonable suspicion to conduct the dog sniff. Magistrate Judge Steger held a hearing on the motion, at which Headden was the sole witness. Headden testified that he called for the K-9 unit based on several pieces of information. First, he had stopped Defendant on four or five prior occasions in a nearby neighborhood and had found marijuana "shake" (buds and other small fragments of marijuana) or "roaches" (butts from marijuana joints) inside the vehicle on more than one occasion. Second, he had received information within the previous month that Ringer carried a firearm. The source of this information was a confidential source (a "CS") who had provided reliable information in the past that had led to multiple search warrants and arrests. Upon receiving the information, Headden

researched Ringer and determined that he was a validated member of the Bounty Street Bloods gang and had previously been arrested for possession of cocaine for resale. Third, according to the NCIC database, both Defendant and Ringer had a record of narcotics-related arrests. Fourth, in Headden's experience, gang members involved in drug trafficking routinely carry firearms. Finally, when Headden asked the occupants of the vehicle their travel plans, they informed him that they were coming from the west side of Chattanooga and were heading downtown to eat. But at the time Headden stopped the vehicle, they had already passed several exits leading directly to downtown Chattanooga and were heading away from the center of town.

After hearing Headden's testimony, Magistrate Judge Steger recommended the motion to suppress be denied. Magistrate Judge Steger found Headden's testimony credible and determined that at the time Headden decided to call for the drug dog, he possessed information sufficient to support a reasonable suspicion that criminal activity was afoot. Magistrate Judge Steger thus concluded the extension of the stop did not violate the Fourth Amendment. *See Rodriguez v. United States*, 135 S. Ct. 1609 (2015) (holding that extension of a traffic stop to conduct a dog sniff violates the Fourth Amendment's proscription of unreasonable seizures absent reasonable suspicion).

Defendant objected to the finding of credibility.

## II. STANDARD OF REVIEW

When a party objects to a magistrate judge's proposed findings or recommendations, the district court must make a *de novo* determination of those portions of the R&R to which objection is made. 28 U.S.C. § 636(b)(1)(C). The district court may exercise its discretion to take additional evidence, recall witnesses, or recommit the matter to the magistrate judge, but the court may also base its *de novo* review upon the record developed before the magistrate judge.

*United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). "Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his *de novo* review of the record he finds a reason to question the magistrate judge's assessment." *United States v. Robinson*, No. 1:07-CR-1, 2007 WL 2138635, at *1 (E.D. Tenn. July 23, 2007).

### III.  DISCUSSION

Defendant contends that Headden's testimony is not credible and that Headden lacked reasonable suspicion to prolong the stop to allow for the dog sniff. Defendant points to five allegedly "critical inconsistencies and omissions" in Headden's testimony, which, he claims, require the Court to reject Magistrate Judge Steger's credibility determination. First, Defendant asserts Headden's testimony that he had never personally met Ringer and had no personal knowledge of his gang involvement is implausible, given that one of Headden's job responsibilities was to research and validate suspected gang members in Chattanooga. Defendant also objects that the Government has not provided any evidence of Ringer's gang membership, such as a gang validation form, or current, specific reports of his gang involvement, other than Headden's testimony.

Second, Defendant argues that Headden's testimony that he had stopped Defendant four or five times and let him go, even after finding marijuana detritus in his vehicle on more than one occasion, "strains credibility." Moreover, Defendant reasons, it is even less likely that he would have continued to consent to Headden's requests to search his vehicle knowing that he had illegal drugs in the vehicle.

Third, Defendant contends it is suspicious that the incident report Headden prepared following the traffic stop contains no mention of Defendant's inconsistent travel story or

Headden's prior encounters with Defendant, even though Headden testified that these two things were among the data on which he relied in deciding to request a drug dog.[1] Defendant argues that finding drugs in an individual's vehicle on prior occasions would strongly support a finding of reasonable suspicion and that it would be strange for Headden to omit any reference to such substantial justification. Defendant also notes that the incident report contains no mention of the marijuana residue found in the car, arguing that keeping accurate records of the discovery of even a small amount of drugs is important for the purposes of training and certifying drug dogs.

Fourth, Defendant points out that although the purpose of the stop was to check for window tint, Headden did not testify that he asked Defendant any questions about the window tint.[2] Finally, Defendant submits Headden's failure to identify any convictions arising from information provided by the CS casts doubt on the reasonableness of his reliance on the CS and/or the credibility of his testimony that he believed the CS to be reliable.

The Court does not find Defendant's arguments persuasive. The "critical inconsistencies" Defendant has proposed are either not inconsistent, or not critical, or both.

As for Headden's testimony that he had no personal knowledge of Ringer, the Court does not find this to be inconsistent with his stated experience researching gang membership. Headden testified that he had heard of Ringer and that he had conducted sufficient research to be

---

[1] Defendant also contends that the incident report did not include any reference to Headden's knowledge of prior convictions incurred by Defendant and Ringer. (Doc. 20 at 3.) While Defendant is correct that the incident report does not mention any prior convictions, there is no indication that Headden relied on prior convictions—or, indeed, that Defendant or Ringer had any prior convictions. Rather, Headden testified that his decision was based, in part, on the fact that the NCIC check revealed that Defendant and Ringer had prior narcotics-related *arrests*. And the incident report *does* mention Headden's discovery of their prior arrests.

[2] To the extent Defendant contends this *absence* of testimony indicates Headden was not "reasonably diligent" in pursuing the traffic violation, *see United States v. Everett*, 601 F.3d 484, 495 (6th Cir. 2010), the argument is inapt. The critical issue is not whether Headden abandoned the prosecution of the traffic stop—clearly he did—but whether his course change was justified by a reasonable suspicion of illegal activity.

able to verify that Ringer was a gang member. The Court does not presume that personal interaction with gang members is always necessary to be able to identify them as such. Additionally, Defendant has provided no credible reason to question Headden's testimony regarding Ringer's gang membership, so there is no need for corroborating evidence to bolster that testimony.

As for Headden's testimony regarding his prior encounters with Defendant, the Court does not find it inherently incredible that an officer would decline to arrest an individual after finding traces of marijuana in a vehicle, even when this occurred on more than one occasion. Nor, in the Court's experience, is it unheard of for an individual to consent to a search of his or her vehicle, despite being aware of the presence of illegal items. If anything, Defendant's knowledge that Headden had previously let him off after finding traces of marijuana would make his consent to subsequent searches *more* likely.

Headden's omission from the incident report of Defendant's inconsistent travel story, his previous encounters with Headden, and the fact that a small amount of marijuana residue was found in the door handle of the vehicle during the search similarly does not detract from Headden's credibility. Ideally, police officers would record every relevant detail leading up to an arrest in their incident reports. In practice, however, this is not realistic. Headden testified that officers frequently omit information from their incident reports due to time constraints. The omission of these details does not undermine Headden's credibility.

As for Defendant's observation that Headden failed to testify that he had asked any questions about window tint, the Court fails to see how his lack of testimony on this point reflects on his credibility. Even if Headden *had* stated affirmatively that he had not asked about the window tint, such a statement would not be inconsistent with his account of the stop. He

6
Case 1:15-cr-00034-CLC-CHS   Document 22   Filed 12/11/15   Page 6 of 8   PageID #: 111

testified that he stopped the vehicle, made contact with the occupants, inquired about their travel plans, asked for Defendant's license and registration, ran the occupants' information through NCIC, returned and asked the occupants to step out of the car, measured the tint, and determined that it violated state law. At no point during that sequence of events was a specific inquiry regarding the window tint necessary. Defendant's argument is without merit.

Finally, Headden's failure to identify any convictions stemming from information provided by the CS is far from fatal to his credibility, for at least two reasons. First, the fact Headden could not affirmatively identify any convictions does not mean such convictions did not actually occur. It is quite plausible that a front-line law enforcement officer like Officer Headden would be more familiar with rates of warrant-issuance and arrests than with conviction rates. Furthermore, the connection between the reliability of information provided during an initial investigation and a successful conviction is highly attenuated. It is frequently the case that information provided to police does not lead directly to a conviction for reasons completely unrelated to the accuracy of the information. Headden testified he deemed the CS reliable because information provided by the CS had led to at least five arrests and search warrants. This testimony is not controverted by Headden's failure to identify subsequent convictions based on those arrests or warrants.

## IV. <u>CONCLUSION</u>

Magistrate Judge Steger stated he "observed [Headden's] demeanor, considered his testimony carefully, and f[ound] him to be a credible witness." (Doc. 19 at 8.) Having reviewed the record, the Court finds no reason to question this conclusion. Accordingly, the Court **OVERRULES** Defendant's objections to the R&R (Doc. 20), **ACCEPTS AND ADOPTS** the R&R (Doc. 19), and **DENIES** Defendant's motion to suppress (Doc. 14).

**SO ORDERED.**

**ENTER:**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**